UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL JACKSON, | Case No. 1:22-cv-00979-CDB (SS) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (Doc. 14) |
| Defendant. | Clerk of the Court to Assign District Judge |

Plaintiff Joel Jackson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 13; hereinafter, "AR") and the parties' briefs (Docs. 14, 16, 17), which were submitted without oral argument. Upon review of the record, the undersigned recommends Plaintiff's motion for summary judgment (Doc. 14) be granted.

## I.    BACKGROUND

### A.    Administrative Proceedings and ALJ's Decision

On February 4, 2020, Plaintiff filed an application under Title II and Title XVIII of the Social Security Act, alleging disability beginning on the amended date of June 30, 2019. (AR 42, 377). Plaintiff's claim was denied initially and again upon reconsideration. (AR 215-16). Plaintiff requested a hearing before an Administrative Law Judge on August 7, 2020. (AR 293).

Administrative Law Judge ("ALJ") Charlie M. Johnson held a hearing on April 13, 2021, wherein Plaintiff, his attorney Zachary Ishikawa, and impartial vocational expert ("VE") Glee Ann Kehr appeared. (AR 36-65). ALJ Johnson issued an unfavorable decision on May 26, 2021. (AR 17-27). The Appeals Council denied Plaintiff's request for review on June 17, 2022, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1-3). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a). (AR 18). The ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2019. (AR 19). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2019, the amended alleged onset date. (AR 19).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments ("MDIs") through the date last insured which significantly limit the ability to perform basic work activities: bilateral hip joint disease, bilateral ankle joint disease, sequela of right hand fracture, and Crohn's disease. The ALJ also found that Plaintiff had the non-severe impairments of hypertension, hyperlipidemia, neuropathy, depression, anxiety, bipolar disorder, posttraumatic stress disorder, alcohol use disorder, marijuana use disorder, cocaine use disorder, and borderline intellectual function. (AR 19-20).

The ALJ also considered the severity of Plaintiff's mental impairments and concluded that the four broad functional areas of mental functioning listed in the "paragraph B" criteria are not satisfied. (AR 20-21)

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 22).

Prior to step four, the ALJ found the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand or walk for four hours in an eight-hour workday. He cannot climb ladders, ropes, or scaffolds. He can

2

> occasionally stoop, kneel, crouch, crawl, climb ramps or stairs, and balance while standing or walking on level terrain.   He can frequently reach, handle, and finger with the right upper extremity.

(AR 22).   In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p.  (AR 22-23).  The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical and other evidence of record.  (AR 23).  The ALJ, citing to Plaintiff's hearing testimony and the medical record, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments.  (AR 23-26).

At step four, the ALJ determined that Plaintiff has past relevant work, under 20 C.F.R. § 404.1565, that he could not perform.  (AR 26).  The ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, namely as a mailroom clerk, office helper, and merchandise marker.  (AR 26-27).  The ALJ concluded that Plaintiff had not been under a disability at any time from the alleged onset date through the date last insured.  (AR 27).

### B.      Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.      LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation

omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.   ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. Plaintiff raises four issues in his motion:

1.   The ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony regarding hip pain and dysfunction;

2.   The ALJ failed to properly evaluate medical source opinions of record;

3.   New medical evidence submitted to the Appeals Council warrants remand; and

4.   The ALJ failed to provide germane reasons to discount lay witness testimony. *See* (Doc. 14).

### A. Whether the ALJ Failed to Provide Clear and Convincing Reasons to Reject Plaintiff's Symptom Testimony Regarding Hip Pain and Dysfunction

The ALJ is responsible for determining credibility,[1] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104,

---

[1] SSR 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016, eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation "is not an examination of an individual's character," but an endeavor to determine how "symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See*, *e.g.*, *Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024).

1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281); *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 Fed. App'x 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (noting that the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)); accord *Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7; *see* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001); *see* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

8

statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting *Carmickle*, 533 F.3d at 1161).

### i. *Parties' Contentions*

Plaintiff cites medical evidence in support of the contention that the ALJ failed to properly characterize the record. *Id.* at 12-15 (citing AR 1073-74, 1080-81, 1213, 1277, 1309, 1312, 1314, 1322, 1317, 1321-22, 1325, 1389, 1447-48, 1465, 1483-84, 1487-1522, 1524, 1563-64, 1576, 1580, 1596). Plaintiff argues that the ALJ erroneously found his avascular necrosis to be "mild" and "stable in early stages" even though Plaintiff used opioid pain medications, attended physical therapy, and underwent decompression surgery on his right hip, with right hip replacement surgery in May 2022; that clinical evidence showed an abnormal gait and use of an assistive device; and that the ALJ erroneously relied "exclusively on objective medical findings to discount Plaintiff's testimony." *Id.* Plaintiff states that the ALJ "claimed that, when evaluating Plaintiff's limitations, he considered several factors other than the objective medical evidence" but the ALJ "offered no specific analysis in this regard." *Id.* at 15 (citing AR 426-427, 481-483).

Defendant asserts that the ALJ analyzed Plaintiff's symptom testimony pursuant to applicable regulations. Defendant argues that the medical evidence from consultative examiner

9

Roger Wagner regarding lack of need for a cane and physician Cyril Rebel regarding decompression surgery supports the ALJ's findings, as did imaging studies reflecting that avascular necrosis in the hips was mild and stable. (Doc. 16 at 14; citing AR 623, 626, 1224, 1286, 1288, 1441, 1448). Defendant notes that the ALJ cited to records from consultative internal medicine evaluator Rustom Damania, which showed that Plaintiff's ankle condition was responsive to surgeries conducted before the amended alleged onset date, and that the ALJ discussed that Plaintiff only had intermittent symptoms despite gaps in treatment for his Crohn's disease, as well as a healed injury on his hand that was not a significant focus of treatment. *Id.* at 16 (citing AR 622, 846-850).

### ii.  *Analysis*

#### 1.  The ALJ's Reasoning

After finding that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the longitudinal treatment record. (AR 23); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why").

The ALJ summarized that Plaintiff alleged symptoms such as abdominal pain, nausea, fatigue, joint pain, distractibility, lost sensation in his hands, and reliance on assistive devices including a cane, walker, and wheelchair to ambulate, with alleged limitations in functions such as standing, walking, lifting, performing postural maneuvers, and using his hands. (AR 23). The ALJ found that the medical evidence "partially supports" some of the Plaintiff's allegations, noting that the Plaintiff had a history of Crohn's disease, ankle fractures requiring surgery as a teenager, a right hand fracture, and avascular necrosis. Since the onset date, the ALJ found that bilateral necrosis was noted on radiological studies and an MRI returned a suspected small labral tear in the right hip, with x-rays of the left ankle noting intact hardware with mild joint narrowing that is suggestive of posttraumatic arthritis. The ALJ determined that Plaintiff had three emergency room visits for gastrointestinal symptoms during the period at issue and physical exams noted abdominal

10

tenderness, reduced hip range of motion, ankle swelling or weakness with reduced range of motion, heel tenderness, mild leg weakness, and antalgic gait with use of a cane. The ALJ found that one prior consultative exam showed slight right grip weakness, with Plaintiff declining to perform right hand testing during a later exam, and that the record included a delivery ticket for assistive devices including a walker, shower chair, and possibly a wheelchair. (AR 23-24).

### 2. Assistive Devices

Plaintiff contends that it was "error for the ALJ to rely exclusively on objective medical findings to discount Plaintiff's testimony," noting that the "Ninth Circuit has held that an ALJ may not reject a claimant's symptom allegations based solely on inconsistencies between the allegations and the objective medical findings." (Doc. 14 at 14) (citations omitted). While Plaintiff's characterization of controlling authority is correct (*see Vertigan*, 260 F.3d at 1049; 20 C.F.R. § 404.1529(c)(2)), the ALJ's citation to said records does not, by itself, suggest the ALJ relied only on a lack of objective medical evidence in discounting Plaintiff's credibility. The medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects" (*Rollins*, 261 F.3d at 857) and an ALJ properly may discount a plaintiff's symptomology testimony if she finds it is contradicted (not merely unsupported) by identified medical records. *Hairston*, 827 Fed. App'x at 773.

The ALJ cites to medical records that do not support or are inconsistent with some of the Plaintiff's testimony, for example, by finding that "[m]ore often, [Plaintiff] was noted to have a normal gait including notes that he can walk on his toes and heels." (AR 24; citing AR 1311, 1315, 1320, 1324-25 1413, 1583, 1588, 1593, 1599). The ALJ does not elaborate beyond stating that these records evidenced Plaintiff was, more often, noted to have a normal gait, compared to "treatment records only sporadically [noting] use of a cane." (AR 24; citing AR 1278, 1465, 1544, 1563). The ALJ found that the medical record, therefore, discounted Plaintiff's symptom testimony regarding dependence on the use of assistive devices.

These records, prepared by nurse practitioners Rafael Teran and Chinyere Ejikeme, do not go into any detail as to the use of assistive devices and state, only briefly, that Plaintiff had a normal gait, included in the portion of the records that relate to general medical indications upon Plaintiff's

presentment at the appointment, without any narrative elaboration. By contrast, physician assistant Ndzeu Heu found that Plaintiff had a history of worsening frequency of falls due to hip weakness, had fallen three times the week of the appointment, was using a tripod cane with antalgic gait, and requested a wheelchair, walker with seat, shower chair, and portable potty, which Mr. Heu ordered for Plaintiff, noting his "insidiously worsening frequency of falls." (AR 1563-64). This record is dated November 11, 2020; the aforementioned records cited by the ALJ in discounting this symptom testimony are at a similar time, ranging from June 28, 2020, to November 26, 2020.

Further, a record cited by the ALJ regarding only sporadic use of a cane is from Mr. Heu, evidencing an appointment on February 22, 2021, concerning hip pain, leg cramps, and spasms. Mr. Heu notes that Plaintiff is using a cane, with antalgic gait, and states his complaints arose "due to rigorous exercise" from physical therapy treatment following his surgery. Plaintiff stated that his wheelchair was repossessed and requested a new one. Mr. Heu ordered the wheelchair. (AR 1543-1544). The ALJ provides that physical therapy records "state that [Plaintiff] can ambulate with full weight bearing without an assistive device." (AR 24; citing AR 1522). The cited record, dated January 5, 2021, includes the language mentioned by the ALJ. However, the record from Mr. Heu dated February 22, 2021, noted that exercise during physical therapy is what led to his complaints concerning hip pain, leg cramps, and spasms, suggesting that the physical therapy was potentially causing worsened symptoms in other respects; this is unaddressed by the ALJ.

Lastly, the ALJ recites that a "prior consultative examiner noted that the claimant carried a cane but used it only minimally, and it did not appear necessary." (AR 24; citing AR 623). A review of the record evidences that the examiner, physician Roger Wagner, found that Plaintiff was "easily able to get up out of the chair in the waiting room, walk at a normal speed back to the exam room without assistance" and used a "very light cane, which he essentially carries touching down only once every five or six steps, variable with right or left and not leaning on it." The exam was dated May 31, 2018. (AR 623). The examination predates the amended relevant period at issue, as well as the more recent evidence noted above, which falls within the amended relevant period.

### 3. Avascular Necrosis

The ALJ observes that, "[w]hile radiology showed avascular necrosis in the hips, this was

described as mild, [Plainiff's] hip joints were not widened, and there was no collapse." (AR 24; citing AR 1286-88, 1441). The ALJ cites findings following an MRI, dated April 8, 2020, by physician Felix Wang. (AR 1286-88). Later that year, on August 4, 2020, Plaintiff had decompression surgery in regards to his avascular necrosis, as recorded by physician Cyril Rebel. Dr. Rebel records the prognosis as "guarded to poor" and "rate of success is not very high." (AR 1447-48). The ALJ also cites findings following a hip x-ray after surgery, dated September 10, 2020, by physician Bashir Tafti. Dr. Tafti notes "[p]ersistent mild sclerosis of bilateral femoral heads, not significantly changed from prior." (AR 1441). This is a one-page record and it is unclear how significant it is in regards to Plaintiff's avascular necrosis symptoms. Though Dr. Tafti uses the word "mild" to describe sclerosis of the bilateral femoral heads, he also states it is "persistent" and "not significantly changed from prior," despite Plaintiff undergoing surgery regarding his condition the month prior.

The ALJ does not discuss whether the surgery was successful and the nature of Plaintiff's treatment following surgery, but the records cited *supra* from Mr. Heu, as well as Dr. Rebel's prognosis and Dr. Tafti's findings, suggest that the surgery may not have been successful overall as to Plaintiff's hip and ambulation symptoms. Further, the ALJ did not provide any reasoning regarding whether Plaintiff's treatment following surgery was conservative and whether it evidenced any continuing and ongoing improvement. *See Godoy v. Comm'r of Soc. Sec. Admin.*, No. CV-23-02000-PHX-MTL, 2024 WL 4211770, at *7 (D. Ariz. Sept. 17, 2024) ("Treatment notes support that despite the left hip surgery, Plaintiff experienced continuing and increasing symptoms following the surgery. Because the surgery was not successful, it does not support the claim that it was conservative."); *cf. Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("Overall, other than the initial surgical repair, [t]he treatment records reveal [that Smartt] received routine and conservative treatment since the alleged onset date. After Smartt's surgery, the ALJ cited documented evidence of 'conservative treatment,' including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication. As a result of these measures, the record shows both self-reported and objective improvement.") (quotation omitted; alterations in original).

///

13

4.   Hip Pain and Evaluation of Factors

Besides the Medical Record

Despite mentioning Plaintiff's testimony regarding joint pain, the ALJ provided no discussion regarding Plaintiff's pain testimony.  (AR 23-24).  The record contains numerous references to Plaintiff's hip, joint, and lower body pain. *See, e.g.*, (AR 1080-81, 1312, 1317, 1321, 1563-64).  Records also mention Plaintiff's use of opioid pain medications. *See, e.g.*, (AR 1312, 1317).  Additionally, Plaintiff mentioned pain, as well as taking medication for pain, during the hearing.  (AR 47, 51).  The ALJ's decision contains no reasoning to discount this pain testimony. *See Shoate v. Barnhart*, No. C 02-02162 WHA, 2003 WL 21556939, at *3 (N.D. Cal. July 3, 2003) ("The ALJ failed to recognize this evidence of Shoate's knee, hip, and back pain in his decision."); *see also Delsid v. O'Malley*, No. 1:23-cv-00665-BAM, 2024 WL 2318045, at *5 (E.D. Cal. May 22, 2024) (collecting cases and noting "the ALJ characterized Plaintiff's treatment as conservative, noting her regular Toradol injections and medication management" and that "Courts, including courts in the Ninth Circuit and in this district, more recently have questioned whether injections (and even pain medications) constitute conservative treatment").

Further, the ALJ stated that:

> In addition to the objective evidence of record, the undersigned has considered several other factors in determining the claimant's residual functional capacity. These factors include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of medications; other types of treatment or measures taken to relieve symptoms; and any other factors concerning the claimant's limitations and restrictions.

(AR 24).  However, the ALJ provides little elaboration, if any, as to the consideration of these factors.  Regarding Plaintiff's impairments to his hip, the ALJ states only that "his hip disease appears to be a longstanding condition that has remained stable in early stages."  (AR 24).  The ALJ provides no further discussion regarding daily activities or other factors.  Although the Commissioner argues that the ALJ satisfied his obligation to consider "other evidence in the record" besides medical findings sufficient to discount Plaintiff's credibility, the only evidence cited consists of "treatment history," such as examining doctors' observations and assessments of

14

Plaintiff's condition.  *See* (Doc. 16 at 15-16).  While it is possible such treatment history informed the ALJ's assessment of Plaintiff's credibility, the ALJ's opinion does not expressly make any such finding nor permit any such reasonable inference by the Court.  *See Burch*, 400 F.3d at 680 (holding an ALJ "must specify what testimony is not credible and identify the evidence that undermines" the plaintiff's complaints).

*    *    *    *    *

In sum, the medical evidence cited by the ALJ in support of his discounting the Plaintiff's symptom testimony does not meet the relevant clear and convincing standard.  The ALJ cites to the medical record in an attempt to show inconsistency between Plaintiff's testimony regarding use of assistive devices.  A review of the ALJ's citations to the record, as well as accompanying records not cited by the ALJ, does not indicate clear inconsistency, resolution of symptoms, or notable and continuing improvement.

The medical evidence does not evidence clear and convincing grounds to reject Plaintiff's symptom testimony regarding use of assistive devices and avascular necrosis and the ALJ does not set forth any reasoning to discount Plaintiff's hip pain.  Thus, the ALJ's citation to the medical record to discount Plaintiff's symptom testimony did not meet the applicable clear and convincing standard.  As Plaintiff offers no argument concerning symptom testimony related to his other impairments, the Court will not analyze the ALJ's decision thereto.

**B.  Whether the ALJ Failed to Properly Evaluate Medical Source Opinions of Record**

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions.  20 C.F.R. § 416.920c.  Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  *See* 20 C.F.R.

15

§ 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the

reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### i. Parties' Contentions

Plaintiff asserts that, in regards to Mr. Heu's and Dr. Rebel's opinions, the ALJ references "only a small quantum of record evidence," specifically, evidence relating to Plaintiff's gait, disregarding that at times his gait was antalgic or slow. (Doc. 14 at 18-19) (citing AR 1081, 1484, 1487, 1564). Plaintiff notes that the record showed use of a cane and a prescription for a walker and a wheelchair. He contends that the ALJ "disregarded the consistency of the treating medical opinions with all of the other evidence of record, including Plaintiff's limited daily activities[,] aggressive modalities of treatment including prescribed opioid medication, and failed decompression surgery of the right hip." *Id.* (citing AR 1074, 1312 1317, 1321, 1447-48, 1522, 1576).

Plaintiff argues that Mr. Heu's opinion was well-supported, as Plaintiff had a "poor prognosis with regard to his avascular necrosis," with the condition worsening despite treatment, leading to decompression surgery, with increased pain and falls after the surgery. *Id.* at 20 (citing AR 1286, 1288, 1447-48, 1484, 1487, 1522, 1563). Regarding Dr. Rebel's opinions, Plaintiff asserts that the "medical source statements and treatment notes supported the assessed work restrictions," with Dr. Rebel's "guarded prognosis" consist with his surgical report. *Id.* at 19 (citing AR 1438, 1448, 1522, 1524, 1563, 1535). Plaintiff cites to Dr. Rebel's July 2021 letter (AR 13) and medical records attached to the motion (Doc. 14-1).

Defendant asserts that the ALJ discussed that medical records contradicted Plaintiff's alleged need for a cane, walker, and wheelchair, that physical therapy records stated Plaintiff could walk with full weight bearing without an assistive device, and Dr. Wagner observed that Plaintiff did not have difficulty in ambulating in the waiting room and exam room. (Doc. 16 at 13-14; citing AR 24, 623, 626, 1522). Defendant notes that the ALJ cited to imaging studies showing that avascular necrosis was mild and stable, and that there was no femoral head collapse following decompression surgery. *Id.* at 14-15 (citing AR 24-25, 1224, 1286, 1441).

///

17

*ii. Analysis*

Here, the ALJ provided the following reasoning in discounting the opinions of Mr. Heu and Dr. Rebel:

> The opinions of Cyril Rebel, MD[,] and Ndzen Heu, a physician assistant, are unpersuasive. These providers each suggested extreme limitations such as the need for an assistive device to ambulate on all surfaces. These opinions were not supported by significant rationales. Dr. Rebel's treating records provide only minimal notes with minimal objective findings. Mr. Heu cited to hip imaging for support; however, the hip radiology showed his abnormalities were mild and stable. Neither opinion is consistent with the evidence showing frequently normal and unassisted gait.

(AR 25; citations omitted).

As a preliminary matter, Plaintiff does not contest the ALJ's findings as to the opinions of the state agency medical consultants and internal medicine consultative examiners. *See* (Doc. 14). Because Plaintiff offers no arguments opposing the ALJ's findings in this regard, the Court will not address the ALJ's findings as to the opinions of these consultants. (AR 25).

### 1. Mr. Heu and Dr. Rebel's Opinions

Mr. Heu provided a physical residual function capacity medical source assessment, dated February 22, 2021. In brief, Mr. Heu sets forth that Plaintiff has a poor prognosis, with pain, weakness, and a slow gait, with the pain worsened with ambulation. Mr. Heu notes that drowsiness is a side effect of Plaintiff's medication, that he can rarely lift or carry weights as low as five pounds or less, nor walk a city block or on uneven ground. Mr. Heu states that Plaintiff has problems with balance when ambulating, cannot climb stairs at a reasonable pace without use of a handrail, must lie down for 15 minutes at a time before needing to stand or walk around, and can stand and walk for a total of two hours in an eight-hour workday. Mr. Heu provides that Plaintiff has significant limitations with reaching, handling, and fingering with both left and right hands, arms, and fingers. Plaintiff cannot climb, constantly experiences pain and stress severe enough to interfere with attention and concentration, and would be off-task for more than 30% of the day, absent for five or more days a month, and be unable to complete five or more eight-hour days a month, with 50% or less efficiency in sustained job performance. Mr. Heu notes that Plaintiff must use a walker,

wheelchair, or other assistive device on all surfaces. *See* (AR 1484-87).

Dr. Rebel also provided a physical residual function capacity medical source assessment, dated March 29, 2021. In brief, Dr. Rebel also notes hip pain, impaired ambulation, reduced mobility, and reduced joint motion, with constant pain in hip joints worsened with walking. Dr. Rebel indicates that Plaintiff can do no climbing, his pain would constantly interfere with his attention and concentration, and his stress would occasionally interfere. Plaintiff would be off-task for more than 30% of the day, missing five or more days a month, unable to complete five or more eight-hour days a month, and with 50% or less efficiency in sustained job performance. Dr. Rebel notes that Plaintiff must use a walker, wheelchair, or other assistive device on all surfaces. *See* (AR 1524-27).

### 2. The ALJ's Findings

The ALJ states both Mr. Heu and Dr. Rebel "suggested extreme limitations." However, the ALJ notes only the "need for an assistive device to ambulate on all surfaces," and does not address any other limitations when evaluating supportability and consistency factors. The ALJ states that Dr. Rebel's "treating records provide only minimal notes with minimal objective findings" and Mr. Heu "cited to hip imaging for support; however, the hip radiology showed his abnormalities were mild and stable." Regarding consistency, the ALJ stated merely that "[n]either opinion is consistent with the evidence showing frequently normal and unassisted gait." The ALJ provides no other reasoning to discount the limitations in Mr. Heu's and Dr. Rebel's opinions.

As noted *supra* in subpart A(ii)(2), the evidence cited by the ALJ regarding Plaintiff walking with a normal gait derives from notation made in a brief fashion among numerous other general medical indicators, with no further elaboration or explanation. Additionally, though a physical therapy record notates that Plaintiff could walk full weight bearing and unassisted, a later record from Mr. Heu noted that the physical therapy was causing hip pains, leg cramps, and spasms. (AR 1543-44). Further, Mr. Heu found that Plaintiff had a history of worsening frequency of falls due to hip weakness, had fallen three times the week of the appointment, was using a tripod cane with antalgic gait, and requested a wheelchair, walker with seat, shower chair, and portable potty, which Mr. Heu ordered for Plaintiff, noting his "insidiously worsening frequency of falls." (AR 1563-

19

64).  These appointments were specifically concerning Plaintiff's hip and ambulation issues.

As noted *supra* regarding Plaintiff's surgery, Dr. Rebel records the prognosis as "guarded to poor" and "rate of success is not very high."  (AR 1447-48).  After the surgery, Dr. Tafti noted "[p]ersistent mild sclerosis of bilateral femoral heads, not significantly changed from prior," in a one-page record:  (AR 1441).  Though Dr. Tafti uses the word "mild" to describe sclerosis of the bilateral femoral heads, he also states it is "persistent" and "not significantly changed from prior," despite Plaintiff undergoing surgery regarding his condition the month prior.  *Id.*  The ALJ does not discuss whether the surgery was successful, or otherwise discuss the nature of Plaintiff's treatment following surgery, when evaluating the supportability and consistency factors.  The records from Mr. Heu and Dr. Rebel, as well as Dr. Tafti's findings, suggest that the surgery may not have been successful overall.

The ALJ provided no other reasoning to discount the limitations offered by Mr. Heu and Dr. Rebel.  Thus, the ALJ did not adequately consider the supportability and consistency of the medical opinion evidence and support his findings with substantial evidence.  *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Leanne B. v. Comm'r Soc. Sec. Admin.*, No. 2:25-cv-00175-TLF, 2026 WL 705226, at *3 (W.D. Wash. Mar. 12, 2026) ("The ALJ may reject a doctor's opinions when they are inconsistent with or unsupported by the medical evidence … Although the ALJ supplemented the analysis with citations to the record, she failed to specify how this evidence supported a lesser degree of limitation related to bathroom use.  Accordingly, the ALJ erred in rejecting the opinions of Dr. Barnes and Dr. Harmon.") (citing, *inter alia*, *Embrey*, 849 F.2d at 421).

### C.  Whether New Medical Evidence Warrants Remand

A court may not consider evidence outside of the administrative transcript when considering a motion for summary judgment appealing an ALJ's decision.  42 U.S.C. § 405(g).  However, a

court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

New evidence is material if it bears "directly and substantially on the matter in dispute" and "where there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him. As such, it must be probative of the claimant's condition at or before the time of the disability hearing." *Held v. Colvin*, 82 F. Supp. 3d 1033, 1042 (N.D. Cal. 2015) (quotations omitted; citing, *inter alia*, 20 C.F.R. § 404.970(b)). "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) (citation omitted).

Separately, the Social Security regulations govern when the Appeals Council is obligated to consider additional evidence submitted after the ALJ issues a decision. *See* 20 C.F.R. § 416.1470; *id.* § 404.970. Pursuant to the regulations, the Appeals Council "will review a case if … the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Id.* § 416.1470(a)(5); *id.* § 404.970(a)(5). Additionally, the claimant must establish good cause exists for the late submission. *Id.* § 416.1470(b); *id.* § 404.970(b).

It is the claimant's burden to establish the evidence should have been considered by the Appeals Council under the regulations. *Garcia v. Saul*, No. 1:19-cv-1103-JLT, 2021 WL 223205, at *4 (E.D. Cal. Jan. 22, 2021) (citing *Hawks v. Berryhill*, No. 1:17CV1021, 2018 WL 6728037 at *4 (M.D.N.C. Dec. 21, 2018)). When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of 20 C.F.R. § 404.970(b) or § 416.1470(b), a remand for further administrative proceedings is appropriate. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).

The Ninth Circuit has distinguished between evidence the Appeals Council "considered" and evidence the Appeals Council merely "looked at" to determine whether the additional evidence was incorporated into the record. "[W]hen the Appeals Council considers new evidence in deciding

whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). In contrast, when the Appeals Council "only looked at the evidence, and determined it did not meet the [Social Security regulations'] standard for consideration … the new evidence did not become part of the record, and [the court] may not consider it." *Amor v. Berryhill*, 743 Fed. App'x 145, 146 (9th Cir. 2018); *see Garcia*, 2021 WL 223205, at *3 (observing Ninth Circuit distinguishes between instances where the Appeals Council "considered" evidence and made it part of the administrative record with instances where the Appeals Council only "looked at" the evidence).

Importantly, where the Appeals Council only looks at the evidence and it does not become part of the administrative record, the district court "may not consider it" unless the plaintiff carries the burden to demonstrate the evidence should have been considered by the Appeals Council. *Amor*, 743 Fed. App'x at 146; *see Hensley v. Comm'r of Soc. Sec.*, No. 2:20-cv-1448-KJN, 2022 WL 891289, at *11 (E.D. Cal. Mar. 25, 2022), *aff'd sub nom. Hensley v. Kijakazi*, No. 22-15796, 2023 WL 4700635 (9th Cir. July 24, 2023) (citing 20 C.F.R. § 404.935(b) (making "good cause" one of the three requirements for Appeals Council consideration of new evidence)).

### i.  *Parties' Contentions*

Plaintiff, after briefly discussing the contents of Dr. Rebel's letter, dated July 1, 2021, and submitted to the Appeals Council, asserts that said contents "showed a reasonable probability of changing the outcome of the ALJ's decision." (Doc. 14 at 21).  Plaintiff argues that, despite Dr. Rebel's statement being dated after the date of the ALJ's decision, it was "clearly rendered based on observations made during the preceding years of treatment," "provided further support for Dr. Rebel's earlier medical opinion," and "contradicted the ALJ's assertion that the avascular necrosis was 'mild' and 'stable.'" *Id.* at 21-22.  Additionally, Plaintiff attaches a medical record to his motion. (Doc. 14-1).  The record is dated May 3, 2022, from Dr. Rebel and relates to a right hip replacement surgery.  From the date of the record, it post-dates both the ALJ's decision and the Appeals Council's denial of review.

Regarding this record, Plaintiff states that, during the pre-surgical evaluation, "Dr. Rebel

noted that Plaintiff did not receive benefit from a prior core decompression surgery on his right hip, and he was in persistent pain." Dr. Rebel also notes that Plaintiff's symptoms became progressively worse and he had to use a walker or cane on a fulltime basis, and that he was "very young to undergo a hip replacement" but they proceeded due to his avascular necrosis, severe pain, and limited daily function. (Doc. 14 at 10).

Defendant asserts that Plaintiff affirmed to the ALJ that the record was complete, did not submit the July 1, 2021, letter to the ALJ after the hearing, and that the letter offers no new information. (Doc. 16 at 20-22).

### ii. Analysis – Whether Appeals Council "Considered" or "Looked At" the Letter

As a preliminary matter, though Defendant briefly discusses the holding in *Brewes*[2] (Doc. 16 at 19), neither party addressed whether the Appeals Council "considered" the newly submitted evidence, such that the Court must consider it when reviewing the ALJ's determination. In this context, the word "considered" is a term of art. *See Hensley*, 2022 WL 891289, at *11. As is the case here, the Appeals Council's decision does not always address all relevant factors in the applicable regulations nor clearly state whether it did or did not consider the additional records. *See id.* at *12.

Here, in relevant part, the Appeals Council stated: "You submitted a statement from Cyril Rebel, M.D., dated July 1, 2021 (1 page). We find this evidence does not show a reasonably probability that it would change the outcome of the decision. We did not exhibit this evidence." (AR 2).

The Court Transcript Index (Doc. 13-2 at 1) includes a one-page letter from Dr. Rebel dated July 1, 2021. Dr. Rebel states that he has had Plaintiff as a patient "for a long time in the orthoped clinic [sic]," Plaintiff has bilateral hip avascular necrosis, which causes very significant pain, as well as gradual arthritis and stiffness of the hip, which leads to limitations of ambulation and function. Dr. Rebel states he is "already using a walker" and has a "sickle cell trait in his family," with "progressive worsening of symptom's despite treatment." Dr. Rebel states that this is a

---

[2] 682 F.3d at 1159-60, 1161-63.

chronic condition and anticipates ongoing treatment.  (AR 13).

Inclusion of this record does not evidence that the Appeals Council "considered" it and made it part of the administrative record.  Rather, its location under the Court Transcript Index and not the list of exhibits suggests the Appeals Council did not consider it.  *See Hensley*, 2022 WL 891289, at *13. `

Accordingly, when considering the language contained in the notice of the Appeals Council as well as the lack of the letter as exhibits in the transcript, it is sufficiently clear that the Appeals Council "looked at" the evidence but did not "consider" it.  *See Hensley*, 2022 WL 891289, at *13 ("It appears sufficiently plain to the undersigned that the Appeals Council looked at Dr. Chaney's opinion just enough to conclude that it was not reasonably likely to change the ALJ's decision and therefore did not further 'consider it' or make it 'part of the administrative record' as contemplated in *Brewes*.") (citation and emphasis omitted); *see also Guzman v. Kijakazi*, No. 1:20-cv-0514 JLT, 2021 WL 6062645, at *3 (E.D. Cal. Dec. 22, 2021) (finding that Appeals Council's statement that it "did not exhibit this evidence" meant that the Council "did not consider the evidence but merely looked at it").

The medical record attached to Plaintiff's motion were not submitted to the Appeals Council.  Thus, the Court may not consider Dr. Rebel's letter nor the records attached to the motion unless Plaintiff carries his burden to demonstrate the evidence should have been considered.

### iii.  Analysis – Whether Plaintiff Has Met His Burden Regarding Good Cause for Late Submission

Insofar as Plaintiff asserts that the Appeals Council erred by failing to consider the letter and incorporate it into the exhibits, he does not meet his burden to set forth good cause for the late submission.  Plaintiff provides no facts or reasoning, and the Court cannot locate any, establishing good cause for the belated submission of the evidence to the Appeals Council.  No reasons are proffered in the letter or brief requesting review sent by Plaintiff's counsel to the Appeals Council.  (AR 363, 539-40).  Neither are any reasons proffered in Plaintiff's motion for summary judgment.  *See* (Doc. 14).  Nor does Dr. Rebel proffer any reasons within his letter itself.  (AR 13).  The Court cannot locate a precise date for when the evidence was submitted to the Appeals Council.  However,

presumably it was submitted, at the earliest, on the date Plaintiff requested review by the Appeals Council, the brief for which was dated June 25, 2021.  (AR 539).  Plaintiff provides no explanation why the evidence was submitted, at a minimum, a month after the ALJ issued his decision and over two months after the hearing.  Nor did Plaintiff's counsel mention any such letter at the hearing, instead responding in the affirmative when asked by the ALJ whether the record was complete.  (AR 42).

Thus, in failing to establish good cause for late submission of the evidence to the Appeals Council, Plaintiff fails to meet one of the critical criteria set forth in the Social Security regulations for a claimant seeking to demonstrate the evidence should have been considered by the Appeals Council.  *See* 20 C.F.R. § 404.935(b).

Accordingly, Plaintiff fails to meet his burden to demonstrate that the Appeals Council erred by failing to consider Dr. Rebel's letter and incorporate it into the exhibits.  *See Hensley*, 2022 WL 891289, at *14.  As Plaintiff's failure to establish good cause by itself results in a failure to meet his burden under the applicable Social Security regulations, the Court need not reach the other factors regarding Dr. Rebel's letter (*i.e.*, whether the evidence is new, material, relates to the period on or before the date of the hearing decision, and there exists a reasonable probability that the additional evidence would change the outcome of the decision).

Turning to the medical records attached to the motion, Plaintiff asserts that they corroborate the progressive nature of Plaintiff's avascular necrosis as they evidence his requiring a hip replacement in 2022.  (Doc. 14 at 20).  The medical records are dated May 3, 2022, and describe a right total hip replacement arthroplasty completed on that date.  It is clear that Plaintiff could not have submitted these records prior as they did not exist at the time of the proceedings.  In the records, Dr. Rebel describes the history of Plaintiff's illness leading up to the procedure, including the decompression surgery in 2020.  Dr. Rebel states that Plaintiff "underwent a core decompression of the right hip 08/2020 [sic].  There was no benefit after the procedure.  Patient had persistent pain.  In fact, over the course of the next year, it got progressively worse to the point where had to use either a walker or a cane on a full-time basis … Ongoing symptoms not responding to conservative measures whatsoever."  (Doc. 14-1 at 1).

25

As such, the Court finds good cause exists for Plaintiff's failure to provide this record during the underlying proceedings, as it did not exist until May 3, 2022.  Additionally, the record is material as it bears directly on Plaintiff's hip conditions that were part of the ALJ's decision, and in particular on the nature of the treatment and effectiveness of surgery, and there is a reasonable possibility that the new evidence would have changed the outcome of the ALJ's determination had it been before him.  Plaintiff's surgery was in August 2020, the hearing was on April 23, 2021, and the ALJ issued the decision on May 26, 2021.  (AR 27, 36).  As such, the records are probative of Plaintiff's condition at or before the time of the disability hearing in that they relate to the effectiveness of the surgery during that time and to his symptom testimony thereof.  *See Held*, 82 F. Supp. 3d at 1042.  The ALJ should consider the record (Doc. 14-1) on remand.

### D. Whether the ALJ Failed to Provide Germane Reasons to Discount Lay Witness Testimony

The undersigned notes that, at the time of the parties' briefing, it was an "open question whether ALJs are still required to consider lay witness evidence under the revised regulations," although it is settled an ALJ need not articulate her consideration of such evidence in a decision. *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).  In the recent case of *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025), the Ninth Circuit clarified that nonmedical sources, to include lay testimony from friends and family, are still to be considered in determining the consistency of medical opinions or prior administrative medical findings; nonetheless, the regulations expressly allow ALJs to discount nonmedical evidence without any explanation.  *Id.* at 670-71.  However, the Ninth Circuit later withdrew the *Hudnall* decision. *Hudnall v. Dudek,* 133 F.4th 968 (9th Cir. 2025); *see Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *1 (9th Cir. May 13, 2025) (declining to resolve the issue of standard applicable to an ALJ's review of nonmedical testimony).  As such, it appears the consideration of lay witness evidence under the revised regulations is again an open question.  As discussed below, the Court need to not resolve this dispute here.

#### i. Parties' Contentions

Plaintiff argues that the ALJ failed to provide any rationale to reject the testimony of lay

witness Rebecca Lancaster.  (Doc. 14 at 24).  Defendant asserts that the ALJ need not articulate reasons for rejecting lay witness testimony for claims filed after March 27, 2017, under the revised regulations.  (Doc. 16 at 22).

### ii.  Analysis

Ms. Lancaster completed a function report on February 17, 2020.  (AR 480-487).  Regarding Ms. Lancaster's report, the ALJ stated only that "[a] friend of the claimant, Rebecca Lancaster, submitted a third-party statement supporting the allegations," with a citation to the function report.  (AR 23).

In brief, Ms. Lancaster describes Plaintiff suffering from severe pain on a daily basis, with an inability to complete normal functions due to the progression of his illness.  She states that his conditions affect his sleep, walking is difficult for him and that he is weak and cannot go out alone.  She lists significant physical and mental limitations, with Plaintiff having fallen down the stairs numerous times and suffering from problems related to his mood.  *See* (AR 480-487).

The Ninth Circuit holds that an ALJ is not required provide specific reasoning when rejecting lay witness testimony where such testimony was similar to the Plaintiff's own subjective complaints, which the ALJ provided clear and convincing reasons for rejecting.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("the ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [the lay witness'] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness'] testimony").

Here, the ALJ did not provide clear and convincing reasons to reject Plaintiff's testimony regarding hip conditions, assistive devices, avascular necrosis, and pain testimony.  As such, the ALJ cannot point to any such reasons to reject the lay witness testimony of Ms. Lancaster regarding said complaints.

Another judge of this Court recently has credited Defendant's interpretation of the revised regulations.  *See, e.g.*, *Gausling v. Comm'r of Soc. Sec.*, No. 2:24-cv-0301-DMC, 2025 WL 347280, at *11 (E.D. Cal. Jan. 30, 2025) ("The Court agrees with the Commissioner that the new regulatory framework requires an ALJ to consider lay testimony but does not necessarily require her to

articulate how she considered it."). The *Gausling* court found that the ALJ did consider lay witness testimony because the ALJ summarized such testimony within her report. In contrast here, there is no such summary from the ALJ which includes mention of Ms. Lancaster's testimony in any detail. *See* (AR 23).

Thus, the undersigned need not decide whether the ALJ was required by Ninth Circuit precedent to provide germane reasons in rejecting said testimony, or whether the revised regulations only required the ALJ to consider such testimony, as the ALJ failed to meet either standard. *Cf. Fryer*, 2022 WL 17958630, at *3 n.1 ("We need not address" the extent to which an ALJ must consider lay witness testimony because "[i]t is clear the ALJ evaluated Fryer's husband's function reports, as he references the reports elsewhere in the decision.").

**E. Remedy**

Plaintiff seeks remand of this case to the Commissioner for further proceedings. (Doc. 14 at 24). Defendant requests the Court affirm the ALJ's decision. (Doc. 16 at 23-24). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

In this case, the ALJ erred by failing to offer clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptomology testimony, failing to adequately consider Ms. Lancaster's statement, and by failing to support discounting the medical opinions of Mr. Heu and Dr. Rebel with substantial evidence. Given these errors, and the medical evidence post-dating the proceedings supplied by Plaintiff, the undersigned will recommend remand for further proceedings.

**IV.    CONCLUSION AND RECOMMENDATION**

The Clerk of the Court is directed to randomly assign a District Judge to this action.

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

    1.  Plaintiff's motion for summary judgment (Doc. 14) be GRANTED;

    2.  The ALJ's decision be REVERSED;

3.  This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

4.  The Clerk of the Court be directed to enter judgment in favor of Plaintiff and against Defendant and to then close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**March 25, 2026**__    _____

UNITED STATES MAGISTRATE JUDGE